[No. B193269. Second Dist., Div. Four. June 30, 2009.]

GEORGE MEDNIK, Plaintiff and Appellant, v.
STATE DEPARTMENT OF HEALTH CARE SERVICES, Defendant and
Respondent.

634

COUNSEL

Landau & Landau, Bruce G. Landau; Law Office of Laura Seraso and Laura Seraso for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Richard T. Waldow, Erin S. Kubota and Gala E. Dunn, Deputy Attorneys General, for Defendant and Respondent.

OPINION

EPSTEIN, P. J.—In this appeal, we consider whether the procedural protections appellant George Mednik received in connection with his temporary yet lengthy exclusion from participation as a Medi-Cal provider satisfied the requirements of due process. Mednik contends the length of his exclusion from participation amounts to a debarment, and that he has not been accorded the fair hearing before an impartial arbiter to which he is entitled.

Although we agree with Mednik's assertion that he has a liberty interest at stake in this matter, we conclude that the process afforded him by the time judgment was rendered in this case was constitutionally adequate. We therefore affirm the judgment denying Mednik's petition for writ of mandate, without prejudice to Mednik pursuing the matter in the trial court with a new petition for writ of mandate based on actions or inaction subsequent to the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Mednik is a licensed physician; he specializes in radiology. From at least 1994 until the events underlying this action, Mednik provided services to beneficiaries of the Medi-Cal system and was reimbursed for such services by respondent State Department of Health Services.[1]

---

[1] According to respondent, effective July 1, 2007, the State Department of Health Services split into two departments. The department responsible for administering Medi-Cal is now known as the State Department of Health Care Services. At all times relevant to this matter, respondent was known as State Department of Health Services (the Department), and it is identified as such throughout the record.

Medicaid is a cooperative federal-state program by which the federal government provides funds to participating states for the purpose of administering medical assistance to eligible persons. (42 U.S.C. § 1396 et seq.) Since California has opted to participate in the federal program, its program must conform to federal Medicaid statutes and regulations. (*Mission Community Hospital v. Kizer* (1993) 13 Cal.App.4th 1683, 1689 [17 Cal.Rptr.2d 303].) California participates in Medicaid through the Medi-Cal program, and has designated the Department as the agency responsible for its administration. (Welf. & Inst. Code, §§ 10740, 14000 et seq.)[2]

Medical professionals wishing to receive reimbursement for services provided through Medi-Cal must enroll in the Medi-Cal program and receive a Medi-Cal "provider number." (Cal. Code Regs., tit. 22, §§ 51000.7, 51000.20.) During his years as a Medi-Cal provider, Mednik had up to 10 individual provider numbers, apparently for different service locations. By 2004, seven of the individual provider numbers had been deactivated.[3] Accordingly, this appeal concerns only three provider numbers: 00A523460, 00A523461, and 00A523462.

The Department periodically requires categories of providers to apply for reenrollment in order to continue to participate in Medi-Cal. (§ 14043.26; Cal. Code Regs., tit. 22, § 51000.55.) Mednik was among the providers selected for reenrollment in early 2003. His reenrollment application packet was received by the Department in June 2003.

While Mednik's reenrollment application was pending, a fraud inspector filed a complaint against Mednik with the Department's investigations branch. The complaint alleged that the investigator made two unannounced visits to one of Mednik's offices and found it lacking the ultrasound equipment necessary for Mednik's radiology practice. Apparently, the investigations branch opened an investigation in April 2004 on the basis of this complaint, apart from the investigation being conducted by the Department's medical review branch in connection with Mednik's reenrollment application.

By letter dated September 1, 2004, the Department notified Mednik that his provider numbers were temporarily being suspended and deactivated, effective September 22, 2004, pursuant to section 14043.36. The letter also stated that payment due under those numbers was being withheld pursuant to section 14107.11. The letter explained that these steps were being taken because

---

[2] Undesignated statutory references are to the Welfare and Institutions Code.

[3] The record shows that the Department had concerns about Mednik's billing practices since at least 1999, and during some periods it subjected Mednik's reimbursement requests to heightened oversight. Mednik details the parties' history in his brief; however we discuss events which took place prior to 2004 only as relevant to the present case.

Mednik was under investigation for fraud, abuse, or willful misrepresentation, and that the suspension and withholding of payment would continue for the pendency of the investigation. The letter also described the evidence that formed the basis for the investigation.[4] It informed Mednik that he could submit a written appeal to the Department in accordance with the procedures set forth in section 14043.65.

On October 4, 2004, the Department notified Mednik by letter that his application for reenrollment had been denied, pursuant to section 14043.36, Health and Safety Code section 100185.5, and California Code of Regulations, title 22, section 51000.50. Additionally, Mednik was informed that he would be ineligible to reapply for enrollment for three years from the date of denial, pursuant to section 14043.65, subdivision (b). The reason for the denial was stated to be the Department's ongoing investigation into alleged health care fraud and abuse. Mednik was again informed that he could appeal under the procedures in section 14043.65.

In accordance with the Department's procedures, Mednik filed a written appeal with the Office of Administrative Hearings and Appeals (OAH) challenging each allegation of the September 1 letter. He requested review of the temporary suspension and deactivation of his provider numbers (hereafter, temporary suspension), the withholding of payments due (withholding), and the denial of his application for reenrollment as a Medi-Cal provider (denial of reenrollment).

In a written opinion dated February 3, 2005, an OAH hearing officer found in favor of the Department. The hearing officer summarized Mednik's arguments refuting the allegations of the September 1 letter and the evidence

---

[4] "Investigation into your claims, patient records, and billing practices reveals an excessive number of ultrasounds per patient and billing per patient. A lack of medical necessity is highly prevalent. There is an unusually high frequency of studies that were repeated multiple times a year, and for no acceptable medical indication. There is stereotyped billing of the studies for stereotyped diagnoses that occur with a frequency far exceeding specialty norms. The pattern of diagnosis and diagnostic studies is strikingly and unusually consistent over your top referring providers. There is billing of the exact same diagnoses and studies on spouses. There is billing for a large number of retroperitoneal ultrasounds that are not performed. All ultrasound reports are stereotyped and abdominal ultrasounds and aortic ultrasounds are of dubious detail to qualify for 'complete'. Further, ultrasound reports change over time in ways that are highly medically improbable. There is billing for the technical component for ultrasounds from your home location, including patients who reside in San Diego County. There is billing on dates when ultrasound equipment was not present and billing on dates when it has been stated you do not operate. [¶] Conflicting statements have been given regarding an actual place of business at your 00A523461 location. Further, information from your claims indicate that a high proportion of these studies were not performed in your office. [¶] Reliable testimony reveals you knowingly participated in fraudulent medical care and billed Medi-Cal in regard to patients at an El Dorado Oaks facility."

presented by the Department to support those allegations. He then set forth the relevant statutory provisions and identified the issues to be decided: "whether the Department was in receipt of reliable evidence of fraud or willful misrepresentation at the time the withhold of payments was placed and whether the Provider was under investigation for fraud or abuse of the Medi-Cal Program at the time he was suspended from the Program." The hearing officer concluded, "Based on the documentation submitted to the record, the Department has shown it [sic] in receipt of reliable evidence indicative of fraud, abuse or willful misrepresentation by the Provider under the Medi-Cal Program. The Department's numerous findings and submissions indicate that the Provider may have intentionally billed for services not rendered, may have rendered substandard services, and may have billed for excessive services. [¶] . . . [¶] Concerning the Department's action to suspend the Provider from the Medi-Cal Program, the Department is justified based on the current investigation of the Provider for fraud or abuse of the Medi-Cal Program." The denial of Mednik's application for reenrollment was likewise upheld. The Department informed Mednik it was adopting the hearing officer's finding as its final decision.

On March 21, 2005, Mednik filed a petition for writ of mandate (Code Civ. Proc., § 1085) in Los Angeles County Superior Court. In subsequent supporting briefs, he contended that the Department's investigator had engaged in intimidation and harassment, the OAH hearing officer had failed to consider the evidence Mednik presented, and the findings on administrative appeal were arbitrary, capricious, and lacking evidentiary support, amounting to a denial of due process. He also objected to the length of the investigation, arguing it was an abuse of discretion and denial of due process for the Department to exclude him from the program for what was then almost two years, with no end in sight. The trial court denied Mednik's petition. In a written tentative ruling, subsequently adopted as the court's statement of decision, the trial court found that the hearing officer had considered all the evidence and that his findings were supported by sufficiently reliable evidence. The court also concluded that Mednik's allegations regarding the investigator did not bear on the issue of the reliability of the evidence, and that the length of the Department's investigation was neither unreasonable nor an abuse of discretion, given the voluminous medical records and other evidence under review.

Judgment in favor of the Department was entered July 19, 2006. This timely appeal follows.

## DISCUSSION

### I

Mednik's primary argument is a due process challenge to the Department's administrative appeal procedures, as they were applied to him. He contends the trial court should have granted his writ petition because the administrative appeal was conducted in a fundamentally unfair manner.

■ The recourse for a Medi-Cal provider dissatisfied with the outcome of an administrative appeal is a petition for writ of mandate, in accordance with Code of Civil Procedure section 1085. (§ 14043.65, subd. (a).) ■ "A petitioner seeking a writ of mandate under this section is required to show the existence of two elements: a clear, present and usually ministerial duty upon the part of the respondent, and a clear, present and beneficial right belonging to the petitioner in the performance of that duty." (*Bergeron v. Department of Health Services* (1999) 71 Cal.App.4th 17, 21–22 [83 Cal.Rptr.2d 481] (*Bergeron*).) The duty Mednik ascribes to the Department—that is, the duty to comport with due process—requires us to address the purely legal questions of the process due and whether Mednik received such process. (See *id.* at p. 22.) On appeal, "foundational factual findings must be sustained if supported by substantial evidence; however, the ultimate determination of whether the administrative proceedings were fundamentally fair is a question of law . . . ." (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1443 [282 Cal.Rptr. 819].) Accordingly, we engage in de novo review of the trial court's denial of the writ.

### A

We first address the scope of this appeal. The parties disagree as to the timeframe this court may consider and as to whether the Department's denial of reenrollment is properly before this court.

With respect to the relevant timeframe, Mednik asserts that we should consider the entire length of time he has been excluded from the Medi-Cal program, including the period during which his appeal was pending. The Department's position is that we may not consider the time that has elapsed since the trial court's judgment.

In light of the amount of time that has passed since the trial court's judgment, we requested supplemental briefing from the parties as to whether the investigation of Mednik has been concluded, whether any of the issues raised by Mednik have become moot, and whether the status of the investigation is a proper subject of judicial notice. In response, Mednik informed the court that the withholding issue has become moot, but he remains excluded from participation in Medi-Cal and has received no further information from the Department about the status of the investigation. The Department informed the court that its investigation is continuing and "has expanded into a cooperative, multi agency federal and state investigation." The Department declined to reveal any further information about the status of the investigation, asserting that it would jeopardize the investigation to do so.

We accept Mednik's representation that the withholding issue has become moot. Accordingly, we do not address whether the Department's actions with respect to the withholding satisfied due process. (See *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 566 [101 Cal.Rptr.2d 86].)

Based on the parties' responses to our inquiry, it appears Mednik's temporary suspension and denial of reenrollment have now extended more than two years past the time when the trial court denied the writ. Yet, as we explain in part ID, *post*, this information by itself is of limited usefulness, and we are not in a position to delve into the reasons for the length of the Department's investigation. Because we conclude that Mednik's exclusion from the Medi-Cal program already amounted to debarment at the time of the trial court proceeding, our discussion of what is required by due process does not rely on the additional time that elapsed after the trial court entered judgment.

With respect to whether the denial of reenrollment is within the scope of this appeal, the Department argues that Mednik did not raise the issue in the trial court. To the contrary, we are satisfied that Mednik preserved the reenrollment issue for review.

Denial of reenrollment was clearly identified as a contested issue in the administrative proceeding, both in Mednik's appeal letter and in the hearing officer's written decision. Mednik's first filing in the trial court, a verified petition for writ of mandate, dated March 21, 2005, included the denial of reenrollment under the heading "Procedural Background" but did not mention reenrollment in the prayer for relief. On November 17, 2005, Mednik filed a

motion for issuance of a peremptory writ of mandate and a memorandum of points and authorities which described the denial of reenrollment as part of the "underlying action." In a brief filed May 8, 2006, in support of the writ petition, Mednik included the denial of reenrollment among the alleged abuses of discretion from which he sought relief. Mednik asked that the trial court either order the Department to reinstate him as a provider or order the Department to grant him a new hearing in front of a different hearing officer. Mednik clearly was challenging his exclusion from the Medi-Cal program as a whole, and either remedy he requested would have pertained to all of the issues raised in the administrative appeal. Under these circumstances, we do not find that Mednik's failure to single out the denial of reenrollment in his original writ petition amounted to a forfeiture of the issue.

## B

We turn to the substance of Mednik's appeal: his contention that he has not been accorded due process in connection with his exclusion from the Medi-Cal program. Mednik argues that his right to due process has been violated because he has been subjected to indefinite debarment without a fair hearing in front of an impartial arbiter. To address this claim we must first identify the procedural protections to which Mednik is entitled, then determine whether he received them.[5]

█ In order to invoke the protection of the due process clause, Mednik must demonstrate that he has a liberty or property interest at stake. (See *Golden Day Schools, Inc. v. State Dept. of Education* (2000) 83 Cal.App.4th 695, 704 [99 Cal.Rptr.2d 917] (*Golden Day*).) He contends the Department's actions amount to debarment and therefore implicate a liberty interest. We agree.

█ A prospective contractor has neither a liberty interest nor a property interest in *receiving* a government contract. (*Golden Day, supra*, 83 Cal.App.4th at pp. 704, 706.) In accordance with this principle, "[p]roviders of Medicare services or other related programs [such as Medi-Cal] have no protected interest in continued participation in such programs." (*Lin v. State of California* (2000) 78 Cal.App.4th 931, 935 [93 Cal.Rptr.2d 88].) Yet,

---

[5] The Department argues that we should not address Mednik's due process argument because "substantial evidence supports the trial court's determination that the Department did not abuse its discretion." In support of that argument, the Department cites to the principle that "[a] judgment correct under any applicable theory should be affirmed." However, Mednik's argument before this court challenges not the strength of the evidence, but the fundamental fairness of the process by which the Department excluded him from participating in the Medi-Cal program. Contrary to the Department's position, this is not an appropriate case for avoidance of the constitutional question.

California law recognizes that a party who has been dealing with the government on an ongoing basis has a liberty interest in being *considered* for a contract. (*Marvin Lieblein, Inc. v. Shewry* (2006) 137 Cal.App.4th 700, 720 [40 Cal.Rptr.3d 547] (*Marvin Lieblein*); *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 542 [133 Cal.Rptr.2d 527] (*Underground Contractors*); *Golden Day, supra,* 83 Cal.App.4th at p. 706.) The relationship between a Medi-Cal provider and the Department is contractual in nature. (See *Bergeron, supra,* 71 Cal.App.4th at p. 19.) Thus, if Mednik has a liberty interest at stake, it arises from his ineligibility to be considered as a potential Medi-Cal provider. This ineligibility is known as debarment. (*Golden Day, supra,* 83 Cal.App.4th at p. 703.)

■ While " 'debarment excludes a person from doing business with the government for a defined period, usually some number of years[,] . . . suspension is a temporary exclusion which is imposed upon a suspected wrongdoer pending the outcome of an investigation and any ensuing judicial or administrative proceedings.' " (*Golden Day, supra,* 83 Cal.App.4th at p. 703.) The Department is authorized by statute to temporarily suspend a Medi-Cal provider "[i]f it is discovered that a provider is under investigation by the department or any state, local, or federal government law enforcement agency for fraud or abuse." (§ 14043.36, subd. (a); see also Cal. Code Regs., tit. 22, § 51200, subd. (c).) A temporary suspension generally does not implicate the same liberty interest as debarment. (*Guzman v. Shewry* (9th Cir. 2009) 552 F.3d 941, 954.) But Mednik contends that his temporary suspension has been in place for such a lengthy period that it amounts to a "de facto, perpetual debarment."

■ Under the circumstances of this case, we conclude Mednik has suffered debarment. This is not only because of the length of his suspension, but because he was formally debarred by statute as a result of the denial of his reenrollment application. Under the terms of section 14043.65, subdivision (b), a provider whose reenrollment application is denied due to an ongoing investigation into fraud or abuse pursuant to section 14043.36[6] may not reapply for three years from the date of the denial. Between the temporary suspension and ineligibility for reenrollment, the Department has rendered Mednik ineligible to be considered for a contract as a Medi-Cal provider. This is debarment, and Mednik therefore has a liberty interest at stake. (*Marvin Lieblein, supra,* 137 Cal.App.4th at pp. 719–720 [Medi-Cal provider debarred for failing to disclose past discipline on an application for reenrollment has a liberty interest which "implicates constitutional due process"].)

---

[6] "[T]he department may deny enrollment to any applicant that, at the time of application, is under investigation by the department or any state, local, or federal government law enforcement agency for fraud or abuse . . . ." (§ 14043.36, subd. (a).)

## C

■  Having determined that Mednik has a constitutionally protected interest at stake, we consider the procedure to which he is entitled. " ' "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Citation.] '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " (*Mathews v. Eldridge* (1976) 424 U.S. 319, 334 [47 L.Ed.2d 18, 96 S.Ct. 893].)

■  Certain procedural safeguards are provided by statute and regulation for a Medi-Cal provider who is temporarily suspended or denied reenrollment. A provider whose Medi-Cal number will be temporarily suspended and deactivated must be notified by the Department in writing, and the effective date of the suspension must be 15 days after the date of the notification. (§ 14043.36, subd. (b).) Written notice also must be given to an applicant who is denied reenrollment due to an ongoing investigation into fraud or abuse. (Cal. Code Regs., tit. 22, § 51000.50, subds. (e), (f).) The notice of denial of reenrollment must specify the reasons for the denial and the administrative remedies available to the provider. (Cal. Code Regs., tit. 22, § 51000.50, subd. (j).) Temporary suspension or denial of reenrollment may be appealed to the Department in accordance with the procedures set forth in section 14043.65.[7] That section does not provide for live testimony or argument, but allows the provider to submit a written appeal and supporting documents. (§ 14043.65, subd. (a).)

---

[7] "Notwithstanding any other provision of law, any applicant whose application for enrollment as a provider or whose certification is denied; or any provider who is denied continued enrollment or certification, or denied enrollment for a new location, who has been temporarily suspended, who has had payments withheld, who has had one or more business addresses used to obtain reimbursement from the Medi-Cal program deactivated . . . may appeal this action by submitting a written appeal, including any supporting evidence, to the director or the director's designee. Where the appeal is of a withholding of payment pursuant to Section 14107.11, the appeal to the director or the director's designee shall be limited to the issue of the reliability of the evidence supporting the withhold and shall not encompass fraud or abuse. The appeal procedure shall not include a formal administrative hearing under the Administrative Procedure Act and shall not result in reactivation of any deactivated provider numbers during appeal. An applicant, provider, or billing agent that files an appeal pursuant to this section shall submit the written appeal along with all pertinent documents and all other relevant evidence to the director or to the director's designee within 60 days of the date of notification of the department's action. The director or the director's designee shall review all of the relevant materials submitted and shall issue a decision within 90 days of the receipt of the appeal. The decision may provide that the action taken should be upheld, continued, or reversed, in whole or in part. The decision of the director or the director's designee shall be final. Any further appeal shall be required to be filed in accordance with Section 1085 of the Code of Civil Procedure." (§ 14043.65, subd. (a).)

Mednik focuses on three aspects of the administrative appeal process as inconsistent with the requirements of due process: (1) he was not given notice or an opportunity to defend himself prior to the imposition of the suspension and denial of reenrollment; (2) the hearing officer considered ex parte communications and secret witness testimony offered by the Department; and (3) the hearing officer was biased and did not review all of the evidence.

■ "Although a government contractor cannot be debarred without procedural safeguards, there is no constitutional entitlement to the full panoply of judicial trial procedures . . . ." (*Underground Contractors, supra*, 108 Cal.App.4th at p. 542.) Our analysis of whether a particular administrative procedure is constitutionally sufficient requires consideration of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge, supra*, 424 U.S. at p. 335.)

The private interest at stake in this matter is significant. (See *Marvin Lieblein, supra*, 137 Cal.App.4th at p. 721 [debarment from Medi-Cal implicates "significant" private interest].) Mednik apparently received hundreds of thousands of dollars per year for his treatment of Medi-Cal patients, and he asserts that these patients make up a substantial portion of his medical practice. The government's interest in this matter is significant as well. The government has a " 'compelling' interest in preventing . . . the waste of public resources." (*Erickson v. United States ex rel. Dep't of Health & Human Servs.* (9th Cir. 1995) 67 F.3d 858, 863.) Additionally, "[t]he state's continuing receipt of federal assistance for Medi-Cal depends on providers' ability and willingness to perform according to law." (*Marvin Lieblein, supra*, 137 Cal.App.4th at p. 721; see also 42 U.S.C. § 1396a(a).)

Since each party has a significant interest at stake, we are left to consider the benefit and burden of additional procedural protections. This involves determining, first, whether the existing procedures provide sufficient protection from the erroneous debarment of an eligible provider from participation in the Medi-Cal program, and, second, whether the value of additional procedures to prevent erroneous debarments would be outweighed by the administrative burden they would place on the Department. (*Marvin Lieblein, supra*, 137 Cal.App.4th at pp. 721–722.)

■ Mednik's first challenge to the administration appeal procedure concerns the absence of an opportunity to defend himself prior to the imposition of the suspension and denial of reenrollment. One could argue in almost any case that a predeprivation procedure affords greater protection than a postdeprivation procedure. Yet it is clear that even when protected interests are involved, due process does not always require a hearing before deprivation occurs. (See, e.g., *Mathews v. Eldridge, supra,* 424 U.S. at p. 340 [recipient of disability benefits not entitled to hearing prior to termination of benefits]; *Bergeron, supra,* 71 Cal.App.4th at p. 27 [Medi-Cal provider under investigation not entitled to hearing before temporary hold placed on payments due].)

■ Generally speaking, "debarment is not intended as punishment," but as a way to enable a government agency "to deal with irresponsible . . . contractors, and to administer its duties with efficiency." (*Golden Day, supra,* 83 Cal.App.4th at p. 704.) Pursuant to section 14043.65, a provider may present a defense after the imposition of temporary suspension and denial of reenrollment. The purpose of the administrative appeal authorized by section 14043.65 is not to determine whether a provider is actually guilty of fraud or abuse, but to determine whether the Department has acted within its statutory authorization to debar a provider in order to maintain the integrity of an active investigation.[8] In Mednik's case, this meant determining whether the temporary suspension and denial of reenrollment were authorized due to an ongoing investigation into fraud or abuse (§ 14043.36), and whether the withholding of payment was supported by reliable evidence (§§ 14107.11, 14043.65). Due process does not require the Department to compromise an ongoing investigation by holding a hearing before imposing a temporary hold on payments due to a Medi-Cal provider suspected of fraud or abuse. (*Bergeron, supra,* 71 Cal.App.4th at p. 27.) We are not convinced that greater protection is required before the imposition of a temporary suspension.

Mednik does not explain how he was adversely affected by the timing of the administrative appeal. He seems to connect his entitlement to a prior appeal to the length of his suspension, but he does not explain how one relates to the other. In order to tie the timing of the appeal to the length of the temporary suspension, the Department would have to know at the time the suspension commenced how long the investigation would last. It would unduly burden the Department to require such a prediction. Postdebarment review of whether the Department's actions were authorized by statute provides adequate protection against erroneous exclusion of a provider.

---

[8] The adjudication of whether the provider actually committed fraud or abuse generally takes place after the Department's investigation is complete, if the Department does not dismiss the matter for lack of evidence. (*Bergeron, supra,* 71 Cal.App.4th at p. 25.)

Mednik's next challenge to the administrative appeal procedure involves the hearing officer's receipt of "ex parte communications" from the Department and testimony from "secret witnesses." After Mednik filed his appeal with the OAH, he received an acknowledgment of appeal, which stated that the medical review branch and payment systems division of the Department were asked to submit relevant information to the hearing officer. The letter also stated that Mednik was welcome to submit evidence. No provision was made for automatic exchange of documents between the parties. Instead, the letter directed, "Any requests for documents and evidences must be made to the Branch of the Department that issued the notices for withhold, temporary suspension, or denial of applications." Mednik does not claim that he made a request for copies of the evidence on which the Department relied. Accordingly, he cannot now object to the fact that he did not receive the Department's evidence until he requested it during the writ proceeding. Mednik also asserts, without citation to the record, that the hearing officer received and relied on testimony in the form of sworn witness statements, and that the Department failed to produce these statements during the writ proceeding. This is mere speculation. Even if, as Mednik argues, the Department took statements from witnesses, there is no evidence they were submitted to the hearing officer. To the contrary, for the reasons explained in part II, *post*, the record before the trial court appears to include the entire administrative record.

To the extent that Mednik's argument may be understood as a challenge to the provision in section 14043.65 for an exclusively written appeal procedure, similar arguments have been considered and rejected. Both *Bergeron, supra*, 71 Cal.App.4th at page 27 and *Marvin Lieblein, supra*, 137 Cal.App.4th at page 724 involved challenges to the written appeal procedure set forth in section 14043.65, and in both cases the court concluded that the procedure satisfied due process. As Mednik makes no effort to distinguish these cases or undermine their reasoning, we will follow their lead.

■ In his final challenge to the administrative appeal procedures, Mednik alleges that the hearing officer did not review the evidence he submitted and that the hearing officer was biased against him. These allegations are based on speculation and unsupported by the record. The only basis for Mednik's assertion that the hearing officer did not review his evidence is the absence of citation to that evidence in the hearing officer's written opinion. This argument ignores the fact that the issues before the hearing officer were limited to whether the Department had reliable evidence of fraud or willful misrepresen-

tation by Mednik and whether Mednik was under investigation for fraud or abuse of the Medi-Cal program. Because this inquiry essentially requires the Department to justify its actions, it is not surprising that the hearing officer's opinion focused on the evidence presented by the Department. In any event, the hearing officer was under a duty to review all relevant evidence, and in the absence of affirmative evidence to the contrary, we presume this duty to have been performed. (Evid. Code, § 664; *Underground Contractors, supra,* 108 Cal.App.4th at p. 548.) Mednik offers no evidence to contradict this presumption.

As to bias, Mednik argues that the hearing officer's "allowance and use of [Department] ex parte communications, information and evidence and his failure to genuinely consider Mednik's evidence renders him a biased decision maker." Because we reject Mednik's arguments regarding the hearing officer's consideration of ex parte communications from the Department and alleged failure to consider Mednik's evidence, there is no basis for finding bias.

In sum, we conclude that Mednik has not identified any aspect of the administrative appeal procedure that fell short of the demands of due process. Mednik was not entitled to a writ of mandate on this basis.

**D**

Although we conclude that Mednik was initially afforded constitutionally adequate procedural protections in connection with his temporary suspension and denial of reenrollment, this conclusion should not be understood as approving the Department's lengthy delay in concluding its investigation.

We decline to prescribe an arbitrary point at which a suspension ceases to be temporary. Nonetheless, a court confronting this question must bear in mind that the purpose of the temporary suspension is to maintain the integrity of the Medi-Cal system while the Department or another enforcement agency determines whether the evidence will support a criminal or civil case against the provider. There must come a point at which the Department determines that such a case is either supported by the evidence or not. Whether this point has come is a factual question best suited for the trial court. If the Department is not conducting a viable and good faith investigation, the government may no longer have a significant interest at stake, and due process may no longer be satisfied by the procedural protections discussed in this opinion.

We have serious reservations about applying the label "temporary" to a suspension that has now lasted more than four years and apparently is continuing. Yet, as a reviewing court, we are not in a position to determine how circumstances have changed, if at all, since the trial court found the duration of the investigation reasonable in July of 2006. At oral argument in this case, counsel for the Department acknowledged that there is no bar to Mednik proceeding with a new writ petition in the trial court, and that if he does so and the investigation is still ongoing, the Department would have the burden of demonstrating that it is proceeding in good faith. Our disposition in this case is therefore without prejudice to Mednik pursuing the matter with a new writ petition in the trial court.

## II

Apart from his due process argument, Mednik contends that the trial court's judgment should be reversed because the court could not make an informed decision due to the Department's failure to provide the entire administrative record during the writ proceeding.

Mednik asserts that he submitted approximately 9,000 pages of evidence to the OAH, and the Department does not dispute that claim. After initiating the writ proceeding in the trial court, Mednik apparently offered the same documents into evidence. During the writ proceeding, the Department produced four volumes of documentation in response to Mednik's discovery request. The Department asserts these volumes contain the same documents it submitted to the OAH, there is no evidence in the record to suggest otherwise, and it does not appear that Mednik took any steps to compel additional production by the Department. These volumes, too, were entered into evidence in the trial court. In total, the trial court received into evidence Mednik's supporting documentation from the administrative appeal, submitted by Mednik, and the Department's supporting documentation from the appeal, submitted by the Department. On these facts, we find no support for Mednik's allegation that the trial court lacked the complete administrative record.

Furthermore, Mednik offers no legal argument in connection with this issue. He does not point to any legal authority that would support the conclusion that the Department failed to comply with discovery obligations, nor does he identify any legal error by the trial court for our review beyond the unsupported assertion that the court was "guessing" it had the entire administrative record. "An appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685 [71 Cal.Rptr.3d 775].)

## DISPOSITION

The judgment is affirmed. Each side is to bear its own costs on appeal.

Willhite, J., and Suzukawa, J., concurred.