Filed 3/12/24  Clemmensen v. Dora Belle Mutual Water Company CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DANNY C. CLEMMENSEN, et al., | F085405 |
| Plaintiffs and Respondents, | (Super. Ct. No. 21CECG00501) |
| v. | |
| DORA BELLE MUTUAL WATER COMPANY, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Mark E. Cullers, Judge.

Herr, Pedersen & Berglund, Leonard C. Herr and Ron Statler, for Defendant and Appellant.

Lang, Richert & Patch; Creede – Blyth Law, Stan D. Blyth and Zena M. Sin, for Plaintiffs and Respondents.

-ooOoo-

Dora Belle Mutual Water Company ("Dora Belle") appeals from the grant of a motion for judgment and issuance of a peremptory writ against it in favor of Danny C. Clemmensen and Kathy A. Clemmensen (the "Clemmensens").  The Clemmensens purchased Lots 8 and 9 in the Shaver Lake Heights subdivision in 2014.  When the property was initially subdivided, the original owners reserved a portion of Lot 9 for their

own use, and thus sold Lots 8 and 9 to the same purchaser, ostensibly to be used together. After the Clemmensens purchased the lots, they desired to build a separate structure on Lot 9 and asked Dora Belle to provide a "will-serve" letter committing to ensure sufficient water would be available to supply houses on both lots. Dora Belle refused to do so, and the Clemmensens filed for a writ of mandate to force Dora Belle to provide the water.

The case was heard by the trial court on the papers and declarations submitted by the parties; neither party apparently requested oral testimony. The court found in the Clemmensens' favor, finding two separate shares had been issued, one for Lot 8 and one for Lot 9; that the shares were appurtenant to the land; and that the Clemmensens were therefore entitled to water service on each lot. The court thereafter issued a judgment and a peremptory writ of mandate, from which Dora Belle appeals.

## BACKGROUND

Dora Belle is a mutual water company formed pursuant to Articles of Incorporation (the "Articles") dated August 3, 1962, and subsequent bylaws approved at a meeting on August 28, 1962. The Articles reflect that Dora Belle was formed by Stephen and Maxine Young as a non-profit corporation to provide water to the owners of property in Shaver Lake Heights Subdivision No. 4, which was apparently originally owned by the Youngs who were subdividing it for sale.

The crux of this dispute involves the provision of water to Lots 8 and 9. On July 3, 2014, the Clemmensens purchased both of these lots from Richard and Linda Tappe, who were successors in interest to the original purchasers, Virgil and Thelma Tappe. Thereafter, the Clemmensens became interested in building another structure on the second lot, and sought to confirm they would have access to water if they elected to do so. Dora Belle refused to agree to supply water to both lots, causing the Clemmensens to file suit.

2.

Certain of the foundational documents for Dora Belle, including the Articles, suggest the corporation intended to issue up to 22 shares of stock, which would be sufficient to include separate shares for Lot 8 and Lot 9. Specifically, per the Articles, the property to be subdivided included "Lots 6, 7, 8, and 9 in Block 30"; where other lots were to receive only a single water share, the same was noted, for instance, by observing there would be "1 [share] certificate jointly for lots 5, 6, and 7 in Block 32." Dora Belle was thus authorized pursuant to the Articles to issue 22 shares of stock, each of which "shall attach and be appurtenant to the lots" in the subdivision.

Other foundational documents for Dora Belle, however, including the bylaws, suggest only 20 shares of stock were to be issued, and that Lots 8 and 9 would be issued only one share of stock to be held jointly for both lots. The bylaws state in Article I, section 1, "[t]o qualify, and be, a shareholder in this corporation, a person, firm, partnership, corporation or any entity (hereinafter referred to as person) must own a lot or lots of the land described in the Articles of Incorporation, except that only one share shall be issued jointly for Lots 8 and 9 in Block 30, and Lots 5, 6, and 7 in Block 32, and except that no share shall be issued for Lots 5 and 14 in Block 33 and Lot 9 in Block 32." Later, in Article IX, Section 1, the bylaws again state: "Certificates for shares of this corporation shall be issued on the basis of one share for each lot, except only one share shall be issued jointly for Lots 8 and 9 in Block 30 …." The reason for the discrepancies between the Articles and the bylaws is not clear from the record.

Regardless of what the foundational documents indicate about what Dora Belle *intended* to do, the record reflects that Share No. 7, appurtenant to Lot No. 8, was issued to Virgil A. Tappe on June 2, 1964. There is a handwritten note appended to the certificate of Share No. 7 that says: "This share voided Replaced by share 22 for lot #9 instead of Lot #8." The record also contains a document listed as Share No. 22, which is dated October 30, 1964, and purports to be intended for Lot No. 9. Share No. 22 does not identify the person to whom it was issued, and instead contains a handwritten notation

3.

across its face stating "Void." Lastly, the record shows a certificate labelled as Share No. 68, issued to the Clemmensens on June 2, 2014, appurtenant to Lot No. 9.

The Clemmensens filed a petition for writ of mandate on February 19, 2021, pursuant to Code of Civil Procedure section 1085,[1] seeking to compel Dora Belle to furnish water to them at cost on their real property adequate to support a dwelling on each of Lot 8 and Lot 9. After overruling the demurrer, the trial court proceeded by way of a motion for judgment on the writ, and the matter was heard on the papers. On September 28, 2022, the court issued an order granting the Clemmensens' motion for judgment on the writ. The court concluded separate shares in Dora Belle were issued for each of Lots 8 and 9 and, once issued, each was appurtenant to the land.[2]

The court entered judgment granting the peremptory writ of mandate on October 6, 2022, and issued the writ the same day. An amended peremptory writ was issued on October 24, 2022. This appeal timely followed.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] The order of the trial court which is appealed from was omitted from the court transcript, apparently by mistake, and is put before us now by way of Dora Belle's Request for Judicial Notice, filed in this court on September 15, 2023. The Clemmensens object to this Request, claiming that while this document "technically would be the proper subject of a request for judicial notice, [Dora Belle] has not followed the required procedure," because it did not request that the superior court clerk add this document to the record pursuant to Rule 8.155(b) of the California Rules of Court. While subdivision (b) does state "a party *may* serve and file a notice in superior court" requesting the omitted portion be added, subdivision (a) of Rule 8.155 states, "[a]t any time, on motion of a party or its own motion, the reviewing court may order the record augmented to include … [a]ny document filed or lodged in the case in superior court." (Cal. Rules of Court 8.155(a)(1)(A).) Respondents concede this document is appropriately part of the record here and would be proper for judicial notice. We interpret the request for judicial notice as a motion to augment the record, grant the motion in relation to this document only, and direct the record be augmented to include the lower court's decision. The motion is denied as to the remaining documents, which are property records that were not before the lower court. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 ["In deciding the question raised by an appeal, a reviewing court will ordinarily look only to the record made in the trial court."].)

# DISCUSSION

## I.     Standard of Review

Section 1085 states, "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, . . . to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person." (§ 1085, subd. (a).) A petitioner seeking a writ of mandate under section 1085 " 'is required to show the existence of two elements: a clear, present and usually ministerial duty upon the part of the respondent, and a clear, present and beneficial right belonging to the petitioner in the performance of that duty.' " (*Mednik v. State Dept. of Health Care Services* (2009) 175 Cal.App.4th 631, 639.)

On appeal, "foundational factual findings must be sustained if supported by substantial evidence," but legal questions are reviewed de novo. (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1443; see also *Shelden v. Marin County Employees' Retirement Assn.* (2010) 189 Cal.App.4th 458, 463 [noting legal questions are reviewed de novo].) We may affirm the trial court's ruling on any ground supported by the record. (*Taylor v. Elliott Turbomachinery Co., Inc.* (2009) 171 Cal.App.4th 564, 573 fn.5; *People v. Evans* (2011) 200 Cal.App.4th 735, 742.)

## II.     The Trial Court Did Not Err in Concluding that, Once Issued, Stock Certificates for Lots 8 and 9 Became Appurtenant to the Land

Dora Belle asserts in its opening brief that it voided Share No. 7, noting "[a]n interlineation on Share #7 shows that it was voided and 'replaced by Share #22.' " Thus, Dora Belle argues that, as a factual matter, Share No. 7 was void. Similarly, in reply, Dora Belle makes clear this issue is factual, noting, "the facts are actually quite simple. Share No. 7 was issued in June, 1964. [Citations.] Share no. 22 was issued later that same year, voiding No. 7."

Without delving into the question of whether and how a mutual water company may lawfully cancel or void a share of stock, an issue not raised by Dora Belle here, it is apparent the trial court was not convinced factually that Share No. 7 ever was canceled or voided. The court noted simply that Virgil and Thelma Tappe "were issued Share #7 for Lot 8" on June 2, 1964 and the Clemmensens "were issued Share #68 for Lot 9" on June 2, 2014. The court later commented Dora Belle had "no legal right to void Share #7, and any attempted voiding was of no force and effect," also indicating it did not believe the share had been voided. The court also found Lots 8 and 9 were transferred to the Clemmensens on July 3, 2014. Thus, the question we must answer here is whether the court was presented with substantial evidence to support its implicit finding that Share No. 7 was not voided. The record does indeed contain such evidence.

Share No. 7 was issued to Virgil A. Tappe on June 2, 1964, for Lot #8 in Block 30 of Shaver Lake Heights. There is a handwritten notation apparently appended to the stock certificate, stating "This share voided Replaced by share 22 for lot #9 instead of Lot #8." It is not apparent from the document who wrote this note, what authority that person had to cancel or void shares in Dora Belle, when the note was written, or the circumstances surrounding such a writing. Nor are we directed elsewhere in the record to any evidence explaining these handwritten notations. It is therefore somewhat unsurprising the trial court elected to ignore these notes, or at the least treat them as being of minimal evidentiary value. Either way, the court did not treat this notation as establishing that Share No. 7 was, in fact, voided, instead simply noting the date Share No. 7 was issued in its recitation of the facts. The only comment the court made in relation to this note was that, even if it was evidence that Share No. 7 was voided—which the court clearly did not believe it was—it had no force and effect.

Similarly, the trial court apparently viewed Share No. 22 as being of minimal evidentiary value. The copy of Share No. 22 in the record also contains a handwritten notation that it was "Replacing Share #7 issued by mistake." This handwritten notation is

6.

illegible in our copy of the record, but one of the parties—presumably the Clemmensens, since it is attached to a Request for Judicial Notice submitted by them in the trial court—added typed language to the document indicating it read, "Replacing Share #7 issued by mistake." However, it also has a handwritten notation stating "Void" written across its face. Moreover, the document does not specify to whom it was issued, if anyone. Again, no date, signature, attribution, or authority for either handwritten notation is included on the document, or elsewhere in the record.

We defer to the trial court's factual findings, such as whether Share No. 7 was voided, and uphold them so long as they are supported by substantial evidence. The court's determination that Share No. 7 was not voided is supported by substantial evidence, and therefore we treat it as established on appeal.[3] It was well within the court's purview as finder of fact to determine that Share No. 22, which is expressly labeled as "Void," did not demonstrate that it replaced Share No. 7, and that the handwritten notations were of no evidentiary value. Thus, if the handwritten notations were given no evidentiary weight, there is no evidence in the record establishing Share No. 7 was voided. Even if the trial court simply elected to ignore all handwritten notations on these share documents, it would have been left with a situation in which apparently three shares were issued, two for Lot No. 9 and one for Lot No. 8, all of which, as explained below, would run appurtenant to the land.

---

[3] We also note it is not readily apparent that a corporation may simply cancel a share of stock that is appurtenant to real property. Appurtenant shares in a water company are generally treated as part of the real estate, and while an owner may elect to separately convey them and thus sever the connection, "the mere exchange of one muniment of title to the water right for another cannot be deemed a severance thereof from the land to which it was concededly appurtenant." (*Woodstone Marble & Tile Co. v. Dunsmore Canyon Water Co.* (1920) 47 Cal.App. 72, 77.) There is no evidence identified to us showing that Share No. 7, once issued, was ever conveyed back to Dora Belle or conveyed separately from the land to which it was appurtenant.

It is undisputed by the parties that, once stock certificates were issued, they became appurtenant to the land.[4]  The articles of incorporation for Dora Belle recite that all water produced or supplied by the company "shall be appurtenant to said land," and share certificates "representing the rights to use said water shall only be transferred with the particular parcel for which same has been issued."  That sentiment is echoed by the Declaration of Restrictions, Easements, Uses, and Covenants (hereafter, the "Declaration"),[5] which states that "[r]ights to water or water shares shall be appurtenant to the land."  Similarly, when Dora Belle applied for issuance of shares, it advised the Department of Corporations that the shares would be "appurtenant to the Land described in its Article of Incorporation."  Indeed, Dora Belle does not argue on appeal that the shares are not appurtenant to the land.  Nor does Dora Belle argue a shareholder is not entitled to a share of water sufficient to supply a dwelling.  Rather, Dora Belle argues

---

[4] In response to a question, Dora Belle's counsel suggested at oral argument that he may not agree that any shares Dora Belle issued run appurtenant to the land.  However, the articles, declaration, and bylaws all indicate an intent on behalf of the corporation to have shares run with the land, and this issue was not disputed in the trial court or in briefing here.  As such, we treat it as undisputed.  Moreover, the question of whether shares in a given water company are appurtenant is a factual one.  (See *Erwin v. Gage Canal Co.* (1964) 226 Cal.App.2d 189, 192–193.)  We defer to the trial court's factual findings, particularly where Dora Belle has not attempted to demonstrate those findings were erroneous.

[5] We reject Dora Belle's labeling of this document as the "CC&Rs," which is an acronym commonly referring to the covenants, conditions, and restrictions that are recorded in connection with the formation of a common interest development.  (See Miller & Starr, California Real Estate, 4th ed., § 28:142 (Dec. 2023 update).)  Dora Belle is not a common interest development, but rather a mutual water company.  Moreover, it appears Shaver Lake Heights is likely not a common interest development either, since there is no apparent common area.  (See *Committee to Save Beverly Highlands Homes Ass'n v. Beverly Highlands Home Ass'n* (2001) 92 Cal.App.4th 1247, 1268–1271 [noting the Davis-Stirling Act does not apply to a development which does not have common area].)  While the Declaration purports to impose certain restrictions and covenants, it does not apparently create common area for the use of all tenants, even among the roads of the development.

only one valid share was issued for Lot Nos. 8 and 9.  However, the court found differently, and that determination is supported by substantial evidence.

We are thus faced with a fairly simple analysis.  Dora Belle issued separate shares for both of Lots 8 and 9, which entitle the holders to water.  Those shares are appurtenant to the land, and thus run with the land when its ownership is transferred.  The Clemmensens are the current owners of Lots 8 and 9 and, because the shares are appurtenant, the owners of the shares issued for each of these lots.  Those shares entitle the Clemmensens to water for their lots.  Dora Belle does not explain how the trial court's conclusion that Share No. 7 was validly issued is not supported by substantial evidence, nor does it present any other legal reason it may deny the holder of Share Nos. 7 and 68 the water rights that accrue to the holder of said shares.[6]

Dora Belle's other arguments do not change this analysis.  Dora Belle argues the trial court misread the articles of incorporation, and that even if the articles of incorporation suggested a share may be issued for each of Lot 8 and Lot 9, the bylaws and Declaration are legally entitled to greater weight.  Setting aside the statutory arguments, which are inapposite,[7] of far greater importance than what any of these

[6] Dora Belle's argument that a corporation must have authority to fix its mistakes is not persuasive.  No one argues that, if the issuance of Share No. 7 were truly a mistake, there is no way for the corporation to fix it.  Indeed, the corporation could have requested the owner of Share No. 7 transfer it back to the corporation at the same time a replacement share was issued correcting the mistake.  However, there is no evidence this occurred, and for reasons that remain unexplained, the corporation apparently simply attempted to issue a second share of stock, Share No. 22 (although again, the copy in the record here purports to be "Void").  We do not sit to evaluate the wisdom of corporate decisions, only their legal effect, and the issuance of shares by a corporation has significant legal effects.

[7] The Davis-Stirling Act, to which Dora Belle and the lower court cited, was not enacted until 1985, more than 20 years after Dora Belle was formed.  (See *Bear Creek Master Assn. v. Edwards* (2005) 130 Cal.App.4th 1470, 1479.)  Moreover, the act only applies to common interest developments, which are "created whenever a separate interest coupled with an interest in the common area or membership in the association is, or has been, conveyed[.]"  (Civ. Code, § 4200.)  As referenced above, Dora Belle is not a

documents say about what the corporation *intended* to do is what the corporation actually did, i.e., its actual issuance of Shares No. 7 and 68. Dora Belle does not point us to evidence showing it was an abuse of discretion for the trial court to conclude Share No. 7 was not voided. Thus, regardless of what other documents say about the shares the corporation intended to issue, it in fact issued separate shares for Lots 8 (Share No. 7) and 9 (Share No. 68), as the trial court found.

Ultimately, Dora Belle has not pointed us to evidence in the record to override the substantial evidence supporting the trial court's finding that Share No. 7 was issued and was not voided. Absent this, the Clemmensens own two shares in Dora Belle—Share No. 7 for Lot 8 and Share No. 68 for Lot 9—which entitles them to all rights, privileges, and benefits of each and every shareholder, including the right to access and use water on both of Lots 8 and 9.

---

common interest development, but a mutual water company, and it does not appear that Shaver Lake Heights contains any common area, meaning the Act would not apply.

10.

## **DISPOSITION**

For the reasons specified above, the judgment is affirmed.  Costs are awarded to Respondents.


SNAUFFER, J.

WE CONCUR:


FRANSON, Acting P. J.


SMITH, J.

11.