[No. F029448. Fifth Dist. Mar. 31, 1999.]

MARIE BERGERON, Plaintiff and Appellant, v.
DEPARTMENT OF HEALTH SERVICES et al., Defendants and
Respondents.

**[Opinion certified for partial publication.*]**

———

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of the Discussion.

## COUNSEL

Bourdette & Partners, Miriam Bourdette and André P. Gaston for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, Frank S. Furtek and Michael V. Hammang, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**THAXTER, J.**—In this appeal from a judgment denying appellant Marie Bergeron's petition for writ of mandate, we hold that due process does not require respondent California Department of Health Services (Department) to hold an administrative hearing as to its right to withhold payment of fees claimed by appellant, a Medi-Cal provider, for dental services she rendered. The decision to withhold was made pending an investigation into appellant's billing practices and was authorized by 42 Code of Federal Regulations section 455.23 (1998).

### FACTS

Appellant is a dentist engaged in the practice of dentistry in Visalia, California under the name Visalia Dental Practice. Her primary clients during the relevant times were indigent patients who are beneficiaries of Medi-Cal services. Under the Medi-Cal system, appellant provides services to patients entitled to receive Medi-Cal benefits and then bills the Department for the services rendered. The Department, using a fiscal intermediary (Delta Dental), reviews the bills in accordance with the regulatory scheme and, upon approval of appellant's bills, makes payment. The relationship between appellant, as a Medi-Cal service provider, and the Department, as the Medi-Cal payer, is a contractual one governed by applicable state and federal regulations. (42 U.S.C. § 1302 et seq.; Welf. & Inst. Code, § 11000 et seq.; Cal. Code Regs., tit. 22, § 51051 et seq.) Appellant began seeing Medi-Cal patients at her clinic in Visalia in August of 1994. Initially she was paid promptly for her services. Thereafter towards the end of 1994, she began having problems with payments. According to appellant, the Department routinely denied payments for root canals and other services performed

by her office, delayed payments for work performed, and routinely required repetitive submission of bills even after additional documentation was provided. As she continued her attempt to seek timely reimbursement, the relationship between appellant and the agency became strained.

In November 1996 the conflict reached a crisis. In appellant's own words, in attempting to obtain payment of approximately $200,000 in unpaid bills, she "went ballistic" in a phone call to an agency administrator, questioning the competency and integrity of the system and its administrators and threatening legal action. Three days later, Investigator Kirk Worthan, from the California Department of Justice, Bureau of Medi-Cal Fraud (Bureau), sought and obtained a search warrant for appellant's business offices. The search warrant was the result of an ongoing fraud investigation initiated after the investigator received information from appellant's estranged husband concerning appellant's billing practices.

On November 12, 1996, respondent Robert Pierson, Chief of the Office of Medi-Cal Dental Services, who supervises the dental services portion of the Medi-Cal program, received a letter from the Bureau asking the Department to withhold temporarily all payments to appellant. As a result of the request, Pierson ordered Delta Dental to withhold payments. Under federal law (42 C.F.R. § 455.23 (1998)), the Department has the discretion to withhold payments upon a showing of reliable evidence the circumstances involve fraud or willful misrepresentation. The Department's policy is to withhold payments when requested to do so by the Bureau. The Bureau is the agency responsible for the detection and investigation of Medi-Cal fraud, a function mandated by the federal Medicaid program. (42 U.S.C. § 1302; 42 C.F.R. §§ 455.12-455.23 (1998).)

The Department provided appellant with written notification that payments were to be withheld and referenced its authority for doing so. The letter, dated February 10, 1997, advised appellant she had a right to submit written evidence for "consideration by the Department of Health Services." The letter did not provide a detailed explanation of the disputed billings or give a detailed factual account of the fraud allegations, although appellant did apparently receive a later packet of information which included the search warrant and supporting affidavits which identified some of the specific allegations of fraudulent billing.

The total amount of the withheld payments was $89,000. On March 7, 1997, appellant responded to the Department and attempted to answer the charges. She requested the payment of all or at least part of the money owed.

On April 30, 1997, the Department notified the Bureau it would cancel the "withhold" within 30 days if additional evidence of fraud was not provided

or if criminal action had not been initiated. On May 30, 1997, the Department informed appellant it would pay her $39,000 owed and would lift the "withhold" of future billings, but it would continue to hold $50,000. The Bureau's position was that it had reviewed only a small percentage of billing records within the period of time appellant's billing practices were suspect and the number of discrepancies found indicated a "pattern of fraudulent activity."

On June 18, 1997, the State Attorney General's Office filed a criminal complaint in Sacramento Municipal Court charging appellant with three separate counts of Medi-Cal fraud: specifically, by billing during the period between August 29, 1991, and April 30, 1997, for services not provided.

This is not an action brought by the Department to limit or condition receipt of appellant's payments pursuant to Government Code section 11503, nor are the circumstances of this case such as to invoke the administrative appeal process established by Welfare and Institutions Code section 14171 to review grievances or complaints arising from audits or examinations of Medi-Cal providers. In these types of proceedings, a hearing would have been provided appellant. The Department, despite appellant's repeated request for one, took and continues to take the position that no hearing is provided for by statutory or regulatory law when the withholding is pursuant to 42 Code of Federal Regulations section 455.23 (1998).

## DISCUSSION

### I. *This Is an Appealable Order**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *The Trial Court Correctly Denied the Writ*

Appellant contends the trial court erred when it refused to issue the requested writ of mandamus because under constitutional and statutory authority she was entitled to a pre- or post-deprivation hearing before her Medi-Cal payments could be withheld. Respondents counter that appellant has not shown there existed a clear duty to provide a hearing, and therefore appellant is not entitled to the relief sought.

 Section 1085 of the Code of Civil Procedure authorizes a trial court to issue a writ of mandate to compel an act which the law specifically requires. A petitioner seeking a writ of mandate under this section is

*See footnote, *ante*, page 17.

required to show the existence of two elements: a clear, present and usually ministerial duty upon the part of the respondent, and a clear, present and beneficial right belonging to the petitioner in the performance of that duty. (*Santa Clara County Counsel Attys. Assn.* v. *Woodside* (1994) 7 Cal.4th 525, 539-540 [28 Cal.Rptr.2d 617, 869 P.2d 1142]; *Sego* v. *Santa Monica Rent Control Bd.* (1997) 57 Cal.App.4th 250, 255 [67 Cal.Rptr.2d 68]; *Thorning* v. *Hollister School Dist.* (1992) 11 Cal.App.4th 1598, 1603 [15 Cal.Rptr.2d 91].) Because the duty here asserted is one allegedly arising out of statute and/or constitutional guaranty, this court must engage in de novo review of the trial court's refusal to issue the writ. (*Los Angeles Lincoln Place Investors, Ltd.* v. *City of Los Angeles* (1997) 54 Cal.App.4th 53, 59 [62 Cal.Rptr.2d 600].)

A. *There was no duty to conduct a hearing under statute or regulation*

We agree with respondents that appellant has shown no clear duty. She relies upon two federal regulations, 42 Code of Federal Regulations sections 455.13(b) and 455.23 (1998), and the due process clause of the United States Constitution to impose a duty to permit an administrative hearing prior to or after implementing a hold on payments owed to Medi-Cal providers.

First, neither of the regulations cited requires a hearing before a hold can be placed on Medi-Cal payments owed to a provider. The first regulation, 42 Code of Federal Regulations section 455.13 (1998), requires as a condition to receiving federal Medicaid funds that the state agency have a method for the investigation of fraud which does not infringe upon the due process rights of persons involved. It is undisputed no express language exists which would require a hearing in circumstances such as these, i.e., where a hold has been implemented during the pendency of a fraud investigation. Likewise, the express language of 42 Code of Federal Regulations section 455.23 (1998) allows for the withholding of payments *without notice* to the provider and provides only that administrative review must be granted *if state law requires it*. It is again undisputed there is no state law requirement for a hearing under the circumstances of this case.

Having pointed to no legislative or regulatory enactment requiring a hearing, appellant's position must rise or fall on her due process argument. We will conclude that the statutory scheme does not deny appellant due process.

B. *Property interest in funds*

Due process requires reasonable notice and opportunity to be heard before governmental action may deprive an individual of a significant

property interest. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Logan* v. *Zimmerman Brush Co.* (1982) 455 U.S. 422, 428-430 & fn. 5 [102 S.Ct. 1148, 1153-1155, 71 L.Ed.2d 265].) ▮ Respondents counter appellant has no property interest at stake, and thus she has no cognizable due process claim, citing *Schroeder* v. *McDonald* (9th Cir. 1995) 55 F.3d 454, 462, *Erickson* v. *U.S.* ex rel. *Dept. Health and Hum. Ser.* (9th Cir. 1995) 67 F.3d 858, and *Levin* v. *Childers* (6th Cir. 1996) 101 F.3d 44. Respondents are correct that there is no property interest in continued participation in the Medi-Cal program, but as appellant contends, they have misunderstood the nature of appellant's position. She is not seeking continued participation in the program. Indeed, according to Department's letter of April 30, 1997, her future participation is not threatened. What she is seeking is payment of claims for services already approved by the Department pursuant to her contract with the state to provide dental services to Medi-Cal beneficiaries.

Were we writing on a clean slate, we might be inclined to hold that the delay in payment of appellant's contractual claim does not constitute a deprivation of a significant property interest. Although the resolution of her claim might be dependent on litigation, appellant would retain the same property interest she had before, notwithstanding the Department's decision to withhold payments pending the fraud investigation. (Cf. *Physicians' Serv. Med. Group* v. *San Bernardino Cty.* (9th Cir. 1987) 825 F.2d 1404, 1408-1409 [although contractual claim may be a property interest, it is not necessarily entitled to federal due process protection]; see also *G & G Fire Sprinklers, Inc.* v. *Bradshaw* (9th Cir. 1998) 156 F.3d 893, 908-909 (dis. opn. of Kozinski, J.).)

The Ninth Circuit Court of Appeals has spoken, however, in *G & G Fire Sprinklers, Inc.* v. *Bradshaw,* holding that moneys owed under a public works contract for work already performed is property entitled to due process protection before the state may withhold payment. (156 F.3d at pp. 901-902 (plur. opn.).) Although the instant case involves a contract for rendition of dental services, rather than construction of public works, we see no meaningful distinction and will accordingly follow the Ninth Circuit's holding.

C. *Due process does not require an administrative hearing*

The fault with appellant's analysis lies not with her claim of a property interest, but her misunderstanding of what due process requires. ▮ Due process does not require a particular type of hearing. "A formal hearing, with full rights of confrontation and cross-examination is not necessarily required." (*Saleeby* v. *State Bar* (1985) 39 Cal.3d 547, 565 [216 Cal.Rptr. 367,

702 P.2d 525].) What due process does require is notice reasonably calculated to apprise interested parties of the pendency of the action affecting their property interest and an opportunity to present their objections. (*Nasir v. Sacramento County Off. of the Dist. Atty.* (1992) 11 Cal.App.4th 976, 985 [15 Cal.Rptr.2d 694].) " 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." (*Hannah v. Larche* (1960) 363 U.S. 420, 442 [80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307].) The extent to which due process protections are available depends on a careful balancing of the interests at stake. (*People v. Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622]; *Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [96 S.Ct. 893, 902-903, 47 L.Ed.2d 18].) In some instances, "due process may require only that the administrative agency comply with the statutory limitations on its authority." (*People v. Ramirez, supra*, at p. 269.)

In addition, the timing of the notice and a hearing may vary depending on the issues at stake. Multiple courts have recognized the validity of postdeprivation hearings held within a reasonable time after the property is seized. (See *FDIC v. Mallen* (1988) 486 U.S. 230, 242 [108 S.Ct. 1780, 1788-1789, 100 L.Ed.2d 265].)

 Under the governing regulations, the Department is permitted, in fact encouraged, pursuant to 42 Code of Federal Regulations section 455.23 (1998) to withhold payments to Medi-Cal providers when provided with reliable evidence that there has been fraud or willful misrepresentation in the practices of the provider. In an obvious effort to comport with the dictates of due process, the regulation carefully lays out the limitations of the state agency's authority to take such action. They include: 1) notice must be given to the provider stating the "general allegations as to the nature of the withholding action, but need not disclose any specific information concerning its ongoing investigation"; 2) the notice must state the regulatory authority for the withholding and advise the provider he or she may submit written evidence for consideration by the agency; and 3) the withholding must be temporary, continuing only until a final resolution of the allegations of fraud. (42 C.F.R. § 455.23; see also *Levin v. Childers, supra*, 101 F.3d at p. 47.) The regulatory scheme is obviously designed to parallel a criminal investigation by the agency or a state fraud prosecuting unit. It is temporary in nature in order to hold the status quo and protect the government's monetary interests until the criminal investigation ends in either abandonment or a judicial proceeding.

It is helpful to understand the Department in this case is not the prosecuting agency. Under the state scheme, the Bureau is charged with investigating

possible criminal violations of statutes intended to protect the integrity of the Medi-Cal program, which includes investigating possible fraudulent billing practices. (Welf. & Inst. Code, § 14107; see also 42 C.F.R. § 455.1 (1998).) The Department was never in a position to adjudicate the validity of the fraud allegations. Under 42 Code of Federal Regulations section 455.23 (1998), the Department withheld payments to appellant only after being notified of the Bureau's investigation of appellant's billing practices and after receiving from it evidence establishing cause to believe appellant was engaging in fraudulent billing practices. The search warrant affidavit, later provided to appellant in connection with the notification letter of February 10, 1997, laid out in part the nature of the allegations and the finding by a neutral magistrate that probable cause existed to support the warrant for search of appellant's offices. This was sufficient under the notice requirements of 42 Code of Federal Regulations section 455.23. It was not necessary to provide a detailed account of the incidents being investigated. To do so would jeopardize the investigation. The statute only requires notice generally of the allegations supporting the investigation. (42 C.F.R. § 455.23(b).)

In addition, the regulation requires an opportunity to respond in the form of written evidence to the notice of withhold. Appellant was told she could submit written evidence for consideration by the Department. It seems clear this opportunity to be heard is not intended to provide a contested proceeding at which adjudication of the allegations are conducted. The clear intent of the regulatory scheme is that the adjudication of the allegations is to occur at a criminal proceeding, unless the matter is voluntarily dropped by the prosecuting authority for lack of evidence. (42 C.F.R. § 455.23(c) (1998).) However, this opportunity to respond is an important safeguard for situations in which the Department may be withholding moneys not subject to the regulatory withhold authority, to clarify mistaken identity, clerical error, or, as in this instance, to seek release of partial payments and/or to clarify future intentions concerning participation in the program. Appellant responded by providing the Department with information concerning the scope of the fraudulent billings allegation. Upon receiving her response, the Department agreed to release $39,000 in payments. Appellant obtained substantial relief through the regulatory procedure.

Neither party has cited a case directly on point, and we have found none. However, there are cases which, by analogy, support our conclusions. For example, in *Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976 [4 Cal.Rptr.2d 837, 824 P.2d 643], a public hospital district hired private contractor Lusardi to build new facilities. The hospital told Lusardi the project was not a "public work" and did not require compliance with the

prevailing wage statute. Labor Code section 1720 et seq. requires all contractors building public works pay prevailing wages and requires the public agency to include prevailing wage provisions in its contracts. No prevailing wage provision was placed in the contract with Lusardi. The Director of the Department of Industrial Relations (DIR) is the state official charged with enforcing the statute. The statute allows for withholding and forfeiture of payments *already earned* to contractors who fail to comply with the statute.

In *Lusardi*, there were no payments withheld. Lusardi's challenge was to a finding that it was subject to the prevailing wage provisions, which would undoubtedly cost Lusardi much since it made Lusardi immediately liable for the increased wages and fines. The court considered Lusardi's due process claims and in so doing, stated the determination by the Director of DIR as to whether a construction project was a "public work" within the meaning of the statute was not an adjudication invoking procedural due process rights to a hearing, although it significantly affected the financial and contractual interests of the private contractor. The court pointed out that these types of decisions are similar to those of a prosecutor who decides whether to file charges. Clearly the decision whether to file charges is not subject to a hearing initially. Instead, there are varying degrees of due process guaranties down the road, and it is ultimately anticipated a full adjudication of the issues will take place in court, with full due process guaranties afforded. (*Lusardi Construction Co.* v. *Aubry, supra*, 1 Cal.4th at pp. 990-993.)

Similarly, in this case the Department is acting to preserve the status quo for the Bureau, which will make a determination whether there is sufficient evidence to seek a court adjudication of the fraud charges. There are procedural due process mechanisms in place under 42 Code of Federal Regulations section 455.23 (1998) and if the matter goes to court, a full contested hearing will be afforded.

In another case arising under the Labor Code, the Ninth Circuit struck down the state's withhold procedures as unconstitutional where no pre- or post-deprivation hearing was afforded and payments withheld could be distributed directly to employees or revert to the state's general fund without there ever being a hearing of any kind. (*G & G Fire Sprinklers, Inc.* v. *Bradshaw, supra*, 156 F.3d 893.) In considering whether the state's statutory scheme complied with due process, the court emphasized a postdeprivation hearing to determine whether the law had been violated would be acceptable under current law. Citing recent United States Supreme Court cases, the Ninth Circuit said postdeprivation hearings, so long as reasonably prompt, are permissible where a balancing of the interests establish it appropriate to hold the hearing post- rather than pre-deprivation. (*Id.* at p. 903, citing *FDIC*

v. *Mallen, supra,* 486 U.S. at p. 242 [108 S.Ct. at pp. 1788-1789].) Specifically, the court held the state's interest in enforcing its prevailing wage statutes is sufficient to justify the withholding of funds *"pending the outcome of whatever kind of hearing may be afforded."* (*G & G Fire Sprinklers, Inc.* v. *Bradshaw, supra,* at p. 904, italics added.)

This is exactly what the Medi-Cal fraud investigation scheme envisions. The state and federal interest in maintaining the integrity of the Medi-Cal system and preserving limited resources for those in need justifies the temporary withholding of payments to those believed to be engaged in fraudulent billing practices until there can be a criminal investigation and the initiation of criminal proceedings or a conclusion that the evidence will not support one. Given the procedural notice mechanisms and the opportunity afforded a provider to respond to the withholding notice, the dictates of due process have been met. To find otherwise would force the Department to conduct a fully contested hearing on the issue of whether appellant had engaged in fraudulent billing practices, and force the Bureau to reveal the fruits of its investigation at a premature stage. This would unnecessarily interfere with the federally mandated investigative arm of the Medi-Cal scheme. Moreover, this is a contractual relationship and appellant knew or is charged with knowing the terms governing her contract. She essentially agreed to the withholding mechanism designed to protect the government's interest in minimizing risks to the limited resources posed by fraudulent provider billing practices.

Finding no due process violations, no regulatory or statutory requirement that the Department conduct a hearing either before or after deciding to withhold payments and finding it would frustrate the legislative objectives to minimize fraud in the Medicaid/Medi-Cal system to require any hearing other than a judicial one, we conclude the trial court correctly denied the writ of mandamus. There is no clear duty to be mandated.

DISPOSITION

Judgment affirmed. Costs to respondents.

Ardaiz, P. J., and Buckley, J., concurred.