Filed 6/18/24  Johnson v. Cal. Dept. of Health Care Services CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| K. ANDREW JOHNSON, | B330572 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCP00750) |
| v. | |
| CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Affirmed.

Weiss & Zaman, Thomas J. Weiss; and Dean L. Johnson for Plaintiff and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Jacquelyn Y. Young, Deputy Attorneys General, for Defendants and Respondents.

————————————————

Appellant K. Andrew Johnson (Johnson) appeals from the denial of his petition for writ of mandate in which he sought an order directing the California Department of Health Care Services (the Department) and its director, Michelle Baass, in her official capacity (collectively respondents) to comply with Welfare and Institutions Code section 14079[1] when setting Medi-Cal reimbursement rates for physician anesthesiologists.

We affirm.

## BACKGROUND

I. *Statutory and Regulatory Context*

    A. <u>Medicaid and Medi-Cal</u>

"Medicaid is a cooperative federal-state program" (*Douglas v. Independent Living Center of Southern California, Inc.* (2012) 565 U.S. 606, 610 (*Douglas*)) that subsidizes the states' provision of medical care to certain families and individuals with insufficient income and resources to meet the costs of necessary medical services (*Armstrong v. Exceptional Child Center, Inc.* (2015) 575 U.S. 320, 323 (*Armstrong*)).

A state's participation in Medicaid is voluntary, but a state that chooses to participate "must comply with federal requirements and administer its Medicaid program through a plan approved by the federal Centers for Medicare and Medicaid Services (CMS).  [Citations.]" (*Dignity Health v. Local Initiative Health Care Authority of Los Angeles County* (2020) 44 Cal.App.5th 144, 152.)  Before approving a state's Medicaid plan, CMS reviews it and any amendments "to determine whether they comply with the statutory and regulatory

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

requirements governing the Medicaid program.  [Citations.]" (*Douglas*, *supra*, 565 U.S. at pp. 610–611.)

California participates in Medicaid through the Medi-Cal program.  (*Asante v. California Department of Health Care Services* (9th Cir. 2018) 886 F.3d 795, 796.)  The Department is the state agency responsible for administering Medi-Cal in accordance with applicable federal and state laws.  (Cal. Code Regs., tit. 22, § 50004, subds. (a) & (b).)  "The Medi-Cal program does not directly provide services; instead, it reimburses participating health care plans and providers for covered services provided to Medi-Cal beneficiaries.  [Citation.]"  (*Marquez v. State Dept. of Health Care Services* (2015) 240 Cal.App.4th 87, 94 (*Marquez*).)

B.  <u>Provider reimbursement rates</u>

1.  *Federal requirements*

A state's Medicaid plan must include provider reimbursement methods.  (*California Hospital Assn. v. Maxwell-Jolly* (2010) 188 Cal.App.4th 559, 565; see also *Santa Rosa Memorial Hospital, Inc. v. Kent* (2018) 25 Cal.App.5th 811, 816 (*Santa Rosa*) ["Federal law mandates that a state plan provide 'a public process for determination of rates of payment under the plan' [citation] and satisfy prescribed standards for setting rates of payment [citation]"].)

Specifically, under Title 42 United States Code section 1396a(a)(30)(A), a state's plan must "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are

sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]"

States must also develop and update an access monitoring review plan, to be submitted to CMS, that includes "[d]ata sources, methodologies, baselines, assumptions, trends and factors, and thresholds that analyze and inform determinations of the sufficiency of access to care which may vary by geographic location within the state and will be used to inform state policies affecting access to Medicaid services such as provider payment rates . . . ."  (42 C.F.R. § 447.203(b)(1).)

2. *California requirements*

Section 14079 requires the Department's director to "periodically review" Medi-Cal provider reimbursement levels and to "periodically revise the rates of reimbursement to physicians . . . to the extent the director deems necessary to comply with applicable federal Medicaid program requirements[.]"  (§ 14079, subd. (a).)  "To the extent consistent with the [D]epartment's federally approved access monitoring plan, or any successor methodology for monitoring reasonable access to Medi-Cal covered services, as described in" Title 42 United States Code section 1396a(a)(30)(A), the periodic review of rates must take into account (1) "[a]nnual cost increases for physicians as reflected by the Consumer Price Index"; (2) "[p]hysician reimbursement levels under the Medicare Program";[2] (3) "[p]revailing customary physician charges within

---

[2]     "Medicare is a federal program that subsidizes health insurance for the elderly and disabled.  (42 U.S.C. § 1395c.)"

4

the state and in various geographical areas"; and (4) "[c]haracteristics of the current population of Medi-Cal beneficiaries and the medical services needed." (§ 14079, subd. (b)(1)-(4).)

The Department's most recent access monitoring review plans were issued in September 2016 and December 2019. Due to the COVID-19 public health emergency, CMS extended the deadline for an updated access monitoring review plan from October 1, 2022, to October 1, 2024.

II. *Procedural History*

    A. <u>Operative amended petition for writ of mandate</u>

Johnson is a licensed medical doctor who provides anesthesia services in southern California. In September 2022, he filed a verified amended petition for writ of mandate (amended petition), "on behalf of himself and other physician anesthesiologists in the State of California[,]" alleging that respondents violated section 14079 when setting Medi-Cal reimbursement rates for anesthesiologists by failing to take into account (1) annual cost increases for physicians; (2) physician reimbursement levels under the Medicare program, and (3) prevailing customary physician charges.[3]

For relief, the amended petition requests a writ of mandate directing respondents to (1) "take into account in their next access report, and all future access reports, the statutory factors

_____

(*Tulare Pediatric Health Care Center v. State Dept. of Health Care Services* (2019) 41 Cal.App.5th 163, 172.)

[3] Medi-Cal has two reimbursement methods—"a fee-for-service basis or a managed care basis. [Citation.]" (*Marquez, supra*, 240 Cal.App.4th at p. 94.) Johnson's claims concern fee-for-service rates for physician anesthesiologists.

5

set forth in" section 14079, subdivision (b)(1)-(3); (2) "update and timely implement '[a]nnual cost increases for physicians as reflected in the Consumer Price Index'"; (3) "pay retroactive reimbursement to physician anesthesiologists from 2001 to the present"; and (4) "pay all retroactive reimbursement into a common fund with 25 percent of this common fund being set aside for attorney[] fees."

B. <u>Demurrer to the amended petition</u>

Respondents demurred to the amended petition. The trial court concluded that Johnson lacked standing to seek a writ compelling the Department to update Medi-Cal reimbursement rates or pay retroactive reimbursements. The court nevertheless overruled the demurrer, finding that Johnson could, potentially, have standing "for relief that seeks to compel [r]espondents 'to take into account in their next access report, and all future access reports, the statutory factors set forth in" section 14079, subdivision (b)(1)-(3).

C. <u>Denial of petition for writ of mandate</u>

Following a hearing on April 4, 2023, the trial court denied Johnson's petition for writ of mandate. The court reiterated its previous demurrer ruling that Johnson lacked standing to challenge Medi-Cal reimbursement rates or seek retroactive reimbursement. As for Johnson's request that respondents comply with section 14079 in their next access report and all future reports, the court found that the claim was not ripe for review. Alternatively, the court found that Johnson had not proven a present abuse of discretion by the Department or a present legal duty to act.

D. <u>Appeal</u>

Johnson timely appealed.

6

**DISCUSSION**

I. *Requirements for Issuance of Writ of Mandate*

Code of Civil Procedure section 1085 authorizes a trial court to issue a writ of mandate "to compel the performance of an act which the law specially enjoins . . . ." (Code Civ. Proc., § 1085, subd. (a).) "An action in ordinary mandamus is proper where . . . the claim is that an agency has failed to act as required by law. [Citation.]" (*California Assn. for Health Services at Home v. State Dept. of Health Services* (2007) 148 Cal.App.4th 696, 705.)

The party seeking a writ of mandate has the burden of proving (1) "a clear, present and usually ministerial duty upon the part of the respondent," and (2) "a clear, present and beneficial right belonging to the petitioner in the performance of that duty." (*Bergeron v. Department of Health Services* (1999) 71 Cal.App.4th 17, 22 (*Bergeron*).) "'A ministerial duty is one that the entity is required to perform in a prescribed manner without any exercise of judgment or opinion concerning the propriety of the act.' [Citation.]" (*Santa Rosa, supra,* 25 Cal.App.5th at p. 822.)

"While a writ of mandate may issue to compel compliance with a ministerial duty—an act the law specifically requires—it may not issue to compel an agency to perform that legal duty in a particular manner, or control its exercise of discretion by forcing it to meet its legal obligations in a specific way. [Citations.]" (*Marquez, supra,* 240 Cal.App.4th at pp. 118–119.)

II. *Standard of Review*

Where, as here, "the duty . . . asserted is one allegedly arising out of statute . . . , this court must engage in de novo review of the trial court's refusal to issue the writ. [Citation.]" (*Bergeron, supra,* 71 Cal.App.4th at p. 22.) "[W]e resolve

7

questions of law—including questions of statutory interpretation and the adequacy of the alleged ministerial acts at issue in th[e] appeal—by de novo review and the exercise of our independent judgment. [Citation.]" (*Marquez*, *supra*, 240 Cal.App.4th at p. 103.)

III. *Analysis*

Johnson contends that, under section 14079, subdivision (b)(1)-(3), respondents have a clear, present, and ministerial duty to review and revise Medi-Cal reimbursement rates in a manner that takes into account (1) annual cost increases for physicians; (2) Medicare reimbursement rates; and (3) prevailing customary physician charges. Assuming, without deciding, that section 14079 imposes such a ministerial duty and that Johnson possesses a beneficial interest in its performance, we conclude that Johnson has not met his burden of proving a violation of that duty and is therefore not entitled to mandamus relief.[4] (See *California Correctional Peace Officers Assn. v. State*

---

[4] Respondents dispute that section 14079 imposes a ministerial duty and contend that Johnson must establish that the Department abused its discretion in order to obtain mandamus relief. (See *Mooney v. Garcia* (2012) 207 Cal.App.4th 229, 235 ["Where the duty in question is not ministerial, mandate relief is unavailable unless the petitioner can demonstrate an abuse of discretion"].) The abuse of discretion standard "recognizes that a challenged administrative agency action comes before the court with a strong presumption that the agency's official duty has been regularly performed and the burden is on [petitioners] to show the agency's action is invalid. [Citation.]" (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 780.) We need not resolve this dispute because our reasons for concluding that Johnson has not demonstrated a violation of section 14079 also preclude a finding of an abuse of discretion.

*Personnel Bd.* (1995) 10 Cal.4th 1133, 1153–1154 [petitioner for a writ of mandate "bears the burden of pleading and proving the facts on which the claim for relief is based"]; *Fair v. Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180, 186 ["[T]he party who seeks a writ of mandate has the burden of proving that the official body which fails to perform an act has thus violated its duty toward him by denying him a clear and present right"].)

The gravamen of Johnson's petition and appellate briefs is that respondents' failure to increase Medi-Cal reimbursement rates for anesthesiology services since 2002 proves that they have failed to take into account annual cost increases for physicians, Medicare reimbursement rates, and prevailing customary physician charges, as mandated by section 14079, subdivision (b)(1)-(3). Specifically, Johnson contends that because the average annual Consumer Price Index increased by 53 percent from 2001 to 2021, while the Medi-Cal reimbursement rates for anesthesiology services remained static,[5] "the Department has completely ignored the [Consumer Price Index] in the Medi-Cal rate-setting process" and has not reviewed rates on an "'annual' basis." Pointing to an 80 percent increase in Medicare rates from 2000 to 2020, while Medi-Cal rates have remained fixed, and a decrease in the ratio of the Medi-Cal anesthesia conversion factor to the Medicare anesthesia conversion factor, Johnson asserts that respondents must not have considered Medicare rates. He also concludes that respondents have "clearly" failed to take into account prevailing

---

[5]     For the purpose of this appeal, we assume the accuracy of the data relied upon by Johnson and the calculations he makes based on that data.

customary charges because Medi-Cal "pays anesthesiologists only 11.67[ percent] of their prevailing customary charges."

We disagree with this logic.

Under section 14079, subdivision (b)(1)-(3), the Department's periodic review of reimbursement rates must "take into account" annual cost increases for physicians as reflected by the Consumer Price Index, Medicare physician reimbursement levels, and prevailing customary physician charges. But nothing in section 14079 requires respondents to match or even correlate reimbursement rates with the Consumer Price Index, Medicare rates, or prevailing customary charges. While the aforementioned factors must be considered, section 14079 does not dictate what effect they should have on rate-setting. Thus, the data and calculations relied upon by Johnson do not compel a rate increase. Accordingly, the absence of a rate increase does not prove that the section 14079, subdivision (b)(1)-(3) factors were not taken into account.

We also disagree with Johnson's claim that the absence of express discussions of the Consumer Price Index or prevailing customary charges in the 2016 and 2019 access monitoring review plans proves that respondents did not consider these factors. Johnson points to no federal or state requirement that compliance with section 14079 be demonstrated in the access monitoring review plans or that every factor taken into account in rate reviews be included in the plans.

Johnson further contends that information regarding respondents' compliance with section 14079 "is exclusively within the Department's own knowledge." Therefore, he reasons, his data and calculations establish "a prima facie case that the Department has not complied with its duties under

section 14079," which "shift[s] the burden of proof to the Department to show that it has complied with its duties under section 14079." This argument is unavailing for several reasons.

First, as the trial court aptly noted, Johnson "could have conducted discovery to inquire as to the steps [the] Department is currently taking to comply with section 14079 . . . ." Such discovery could have illuminated what factors respondents were or were not considering. Second, as discussed above, Johnson's data and calculations do not, alone, conclusively prove anything about respondents' compliance with section 14079. Third, unless provided by law, the burden of proof remains firmly with the party seeking a writ of mandate. (*American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 460 ["'[u]nless otherwise provided by law, "the petitioner always bears the burden of proof in a mandate proceeding brought under Code of Civil Procedure section 1085[]"'"].) Johnson provides no legal authority for adopting a burden-shifting framework here. (See *Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 ["parties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant's . . . issue as waived"].)

Finally, we note that Johnson is not left without recourse to challenge reimbursement rates he considers inadequate. He can file an administrative action against the Secretary of CMS, the federal agency that approves Medi-Cal rates. (See *Armstrong, supra*, 575 U.S. at p. 331; *Santa Rosa, supra*, 25 Cal.App.5th at pp. 814, 818–819.) Additionally, federal regulations mandate that the access monitoring review plan "be published and made available to the public for review and comment for a period of no

11

less than 30 days, prior to being finalized and submitted to CMS for review." (42 C.F.R. § 447.203(b).) Thus, Johnson will have an opportunity to comment on the access monitoring review plan due on October 1, 2024.

All other issues are moot.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, Acting P. J.
ASHMANN-GERST

We concur:

_____, J.
CHAVEZ

_____, J.
HOFFSTADT

12